# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**MIKE GINES**                                                               **CIVIL ACTION**

**VERSUS**                                                                            **No. 08-598**

**D.R. HORTON, INC., ET AL.**

## RULING

This matter is presently before the Court on a Motion to Dismiss (Doc. No. 7) filed by defendants, D.R. Horton, Inc., and Reliant Heating and Air Conditioning of Louisiana, L.L.C. Plaintiff, Mike Gines, has filed an opposition (Doc. No. 10). Plaintiff has since filed an amended complaint (Doc. No. 36), and the parties have filed supplemental memoranda on the motion to dismiss. Jurisdiction is based on diversity, 28 U.S.C. § 1332. The Court, having reviewed the record, the law, and the arguments of the parties, now concludes that the defendants' motion to dismiss should be **GRANTED** in part and **DENIED** in part for the following reasons.

Plaintiff has also filed a motion for default judgment against Reliant-Texas (Doc. No. 54). However, because Reliant-Texas is alleged to be solidarily bound with a remaining party, against whom plaintiff is not seeking default judgment, the court defers ruling on the default judgment motion until further issues of liability are resolved and until a hearing can be had if necessary pursuant to F.R.C.P. 55(b)(2).

## FACTUAL BACKGROUND

On November 21, 2006, plaintiff purchased a new home constructed by D.R. Horton, Inc. (D.R. Horton). The air conditioning and heating system was installed by

Reliant Heating and Air Conditioning of Louisiana, L.L.C. (Reliant) and designed by Reliant Heating & Air Conditioning, Inc. (Reliant-Texas). After plaintiff took possession of the home, he discovered that the heating and cooling system installed in the home did not have the capacity to effectively maintain an appropriate temperature.

On July 9, 2007, plaintiff made written demand by certified mail upon D.R. Horton to repair the heating and cooling system (Doc. No. 36, Exhibits A & B). Multiple attempts were made by D.R. Horton and Reliant to repair the cooling system during the summer of 2007. The problems remained despite attempts to resolve them.

Plaintiff filed suit against D.R. Horton and Reliant in state court on August 22, 2008. Reliant filed Notice of Removal (Doc. No. 2) with this Court on September 23, 2008, and D.R. Horton joined. The suit was removed and plaintiff was granted leave to file an amended complaint. In the amended complaint, plaintiff brings suit on behalf of himself and all plaintiffs similarly situated who own houses in the Forest Ridge Subdivision of Livingston Parish, Louisiana. The amended complaint also names Reliant-Texas as a defendant. The complaint alleges that defendants are liable because "the air conditioning system, including the duct work, is not reasonably fit for its ordinary use; the air conditioning system fails to properly cool the home; the air conditioning system is undersized and continually runs on hot

days; and any other defects in the air conditioning system to be shown at trial."[1] More precisely, plaintiff contends that the ventilation ducts were improperly designed and installed, and the 3.5 ton heating and cooling system installed in his house is defective in that it does not have the capacity to effectively maintain an appropriate temperature within his home. As a result of the allegedly defective air conditioning system and duct work, plaintiff asserts causes of action under the Louisiana New Home Warranty Act (NHWA),[2] redhibition,[3] breach of contract,[4] poor workmanship,[5] non-compliance of contract,[6] and negligence.[7] Plaintiff seeks reimbursement for the cost of replacing the system, reimbursement for increased energy bills, and attorney's fees and costs associated with this suit.

Defendants, D.R. Horton and Reliant, filed a Motion to Dismiss (Doc. No. 7) on September 29, 2008, prior to the filing of plaintiff's amended complaint. In support of their Motion to Dismiss, defendants argue that (1) the NHWA is plaintiff's exclusive remedy against D.R. Horton; (2) plaintiff fails to state a claim upon which

---

[1] Record document number 36, ¶ 29.

[2] La. Rev. Stat. Ann. § 9:3141, et seq.

[3] La. Civ. Code Ann. art. 2520.

[4] La. Civ. Code Ann. art. 1994.

[5] La. Civ. Code Ann. art. 2762.

[6] La. Civ. Code Ann. art. 2769.

[7] La. Civ. Code Ann. art. 2315.

3

relief may be granted against D.R. Horton under the NHWA because, pursuant to the NHWA, D.R. Horton warrants only conditions which cause actual physical damage to the home; (3) Reliant is not subject to the NHWA, and (4) claims against Reliant in redhibition and fraud have prescribed.[8]

## DISCUSSION

**A. Defendants' Motion to Dismiss**

**1. Legal standard**

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[9] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[10] In reviewing the complaint, courts accept all well-pleaded facts in the complaint as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). Courts do not, however, accept as true all legal conclusions. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A plaintiff's complaint must provide sufficient factual content for the court to reasonably infer that the plaintiff is entitled

---

[8] This motion was filed prior to the naming of Reliant-Texas as a party to this suit. As a result, claims against Reliant-Texas were not addressed in this motion.

[9] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Bell Atlantic v. Twombly,* 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).

[10] *Bell Atlantic*, 127 S.Ct. at 1965.

4

to relief based upon the context of the case and the court's "judicial experience and common sense." *Id.* at 1949-50.

**2. Claims against D.R. Horton**

**a. The NHWA is the plaintiff's exclusive remedy against D.R. Horton**

In his amended complaint, plaintiff seeks to impose liability on D.R. Horton based on the NHWA, redhibition, breach of contract, poor workmanship, non-compliance of contract, and negligence.[11] Defendant contends that the NHWA is plaintiff's exclusive remedy against D.R. Horton and that all other causes of action against D.R. Horton should be dismissed accordingly.[12] The court agrees.

The NHWA "provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply."[13] Interpreting this language, Louisiana courts have precluded claims against the builder of a new home in redhibition, breach of contract, poor workmanship, non-compliance of contract, and negligence where the various causes of action essentially coalesced into claims between a builder and an owner relative to

---

[11] Record document number 36, pp. 7-24, Counts one, three, four, five, seven, and eight.

[12] Record document number 43, pp. 2-4.

[13] La. Rev. Stat. Ann. § 9:3150.

5

construction defects in a new residence.[14] However, where the cause of action did not wholly arise from construction defects, violations of the building code, or poor workmanship, Louisiana courts have determined that the NHWA was not the sole remedy available to the home owner.[15]

---

[14] See, e.g., *Carter v. Duhe*, 921 So.2d 963 (La. 2006) (reinstating the trial court's grant of exception of no cause of action on the basis that, despite claims of negligence and breach of contract, the NHWA was the owners' exclusive remedy against builders for the construction of the home); *Barnett v. Watkins,* 970 So.2d 1028 (La. App. 1st Cir. 9/19/07) (affirming the trial court's summary judgment dismissal all non-NHWA claims, including those in negligence and non-compliance of contract, where the various causes of action essentially coalesced into claims between a builder and an owner relative to construction defects in a new residence); *Sowers v. Dixie Shell Homes of America, Inc.*, 762 So.2d 186 (La. App. 2d Cir. 5/15/00) (holding that the NHWA precludes claims in redhibition where the home owners' complaints all concerned defects arising from the poor workmanship in the construction of the home); *Ory v. A.V.I. Construction, Inc.,* 848 So.2d 115 (La. App. 5th Cir. 5/28/03),(holding that homeowners' exclusive remedy against builder for construction defects was under the NHWA, and thus homeowners could not sue builder in redhibition).

[15] See, e.g., *Allstate Enterprises, Inc. v. Brown,* 907 So.2d 904 (La. App. 2d Cir. 6/29/05) (NHWA did not apply to contract dispute between contractor and homeowners where contractor was not responsible for building the entire home); *Thorn v. Caskey*, 745 So.2d 653 (La. App. 2d Cir. 09/22/99) (NHWA was designed to protect the owner from faulty workmanship, but not to insure completion of the construction of a home under the terms of the contract between the owner and builder. Therefore, a builder may be found liable in an action for breach of contract where the builder abandons construction of the home); *Squyres v. Nationwide Housing*, 715 So.2d 538 (La. App. 3d Cir. 06/03/98) (where the seller of a manufactured home was not the builder, NHWA was not the exclusive remedy between the owner and seller); *Melancon v. Sunshine Construction*, 712 So.2d 1011 (La. App. 1st Cir. 05/15/98) (water damage sustained by owner's property was caused by vandalism and was not a defect in construction which would fall under the NHWA); *Leon v. Deters Custom Homes, Inc.,* 711 So.2d 346 (La. App. 1st Cir. 04/08/98) (NHWA was not applicable where damages to the owner's house were not caused by defects in the construction of his house but in drainage problems the builder created upon expansion of the subdivision).

6

It is undisputed that, under the NHWA, D.R. Horton is the builder[16] and plaintiff is the owner[17] of the home in issue in the instant case. The issue is whether claims of an under-capacitated air conditioning unit and insufficiently installed duct work fall within the purview of the NHWA. The Court holds that these claims are covered by the NHWA for two reasons.

First, all of plaintiff's claims against D.R. Horton stem from the fact that D.R. Horton allegedly called for the installation of defective ventilation ducts and failed to ensure the installation of an air conditioning and heating unit with the capacity to effectively maintain an appropriate temperature within plaintiff's home. Since planning and building are both elements of the process of constructing a home, the multiple causes of action that plaintiff asserts essentially coalesce into claims between a builder and an owner relative to "construction defects" in a new residence.[18] Second, under Louisiana Revised Statute 9:3144(A)(2), the builder, D.R. Horton, is required to warrant that "[t]wo years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating

---

[16] The NHWA defines a builder as "any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence." La. Rev. Stat. Ann. § 9:3143(1). Plaintiff alleges that D.R. Horton constructed the home at issue in this case. See Doc. No. 36, p. 4, ¶ 6.

[17] An owner is the initial purchaser of a home. La. Rev. Stat. Ann. § 9:3143(6). An initial purchaser includes any person for whom a home is built or the first person to whom a home is sold upon completion of construction. La. Rev. Stat. Ann. § 9:3143(4). Plaintiff states that he was the initial purchaser of the home at issue in this case. See Doc. No. 36, p. 4, ¶ 6.

[18] Bolstering this position is the fact that, under the NHWA, a builder warrants the home from violations of applicable building codes as well as deviations from the plans and specifications for construction of the home. See Thorn, 745 So.2d at 660-661.

systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards." Because the air conditioning and heating unit is integrated into the ventilation ducts such that they comprise a "system" as countenanced by Louisiana Revised Statute 9:3144(A)(2), these items are specifically within the purview of the NHWA.[19] Therefore, the NHWA is plaintiff's exclusive remedy against D.R. Horton and any other claims against D.R. Horton must be dismissed.

### b. Pursuant to the NHWA, D.R. Horton warrants only conditions which cause actual physical damage to the home

Defendants next assert that, under the facts in this case, and under the provisions of the NHWA, D.R. Horton is exempt from liability. More specifically, defendants argue that insufficient air conditioning and heating capacity is not the "actual physical damage" to a home that a builder is required to warrant under the NHWA.[20] Conversely, plaintiff contends that a defective heating and cooling system is, in and of itself, "actual physical damage" to a home.

La. Rev. Stat. Ann. § 9:3144(B)(13) provides, in relevant part, that "[u]nless the parties otherwise agree in writing, the builder's warranty shall *exclude*. . . [a]ny

---

[19] See, e.g., *Craig v. Adams Interiors, Inc.*, 785 So.2d 997, 1002-1004 (La. App. 2d Cir. 04/06/01) (affirming the District Court's finding that a fireplace was covered under the NHWA warranty as a "heating system" rather than a "fixture" or "equipment" due to the fact that the "fireplace was integrated into and became part of the heating system.").

[20] See La. Rev. Stat. Ann. § 9:3144(B)(13).

condition which does not result in actual physical damage to the home."[21] This court is aware of no Louisiana court decisions that directly address whether improperly installed ventilation ducts or an under-capacitated air conditioning system constitute "actual physical damage" to a home. Plaintiff cites *Graf v. Jim Walter Homes, Inc.*, 713 So.2d 682 (La. App. 1st Cir. 5/15/98), which addresses a builder's failure to follow plans and specifications, for the proposition that a defective heating and cooling system is, in and of itself, actual physical damage. Plaintiff's reliance on *Graf* is misplaced, however.

In *Graf*, the Court allowed an owner's claim against a builder under the NHWA despite the failure of the owner to show actual damage to the home's foundation, floor structure, wall structure, and roof/ceiling structure. Although the owner could not literally show any physical damage to the home, the *Graf* Court reasoned that the because of the builder's gross departure from applicable building standards, the structural integrity of the home had been diminished such that the diminution constituted "actual physical damage" under the NHWA.[22] With the foregoing in mind, the Court stated that it would be absurd if "the NHWA require[d] the home to be

---

[21] Emphasis added. "Actual physical damage" is not defined in the NHWA. However, "major structural defect" is defined as "any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable: (a) Foundation systems and footings; (b) Beams; (c) Girders; (d) Lintels . . ." La. Rev. Stat. Ann. § 9:3143(5).

[22] *Graf*, 713 So.2d at 689.

almost falling down around its inhabitants before physical damage could be shown."[23]

In stark contrast to *Graf*, plaintiff in the case *sub judice* has alleged no facts which would suggest that the home's foundation, structure, or any materials used to build the home have sustained, or are subject to sustaining, any impending physical damage as a result of the insufficient capacity of the air conditioning and heating system or the improper installation of duct work. Moreover, in *Graf*, the builder of the home was required, and failed to, undertake construction pursuant to plans and specifications which were included in the contract it entered into with plaintiff.[24] In the instant case, plaintiff neither alleges that the builder failed to follow applicable building codes, nor that the builder failed to conform to plans or specifications which were included in the building contract.

The unambiguous language of the statute states that a builder does not warrant any "condition which does not result in actual physical damage to the home."[25] The alleged defects in this case are "condition[s]." Further, the "condition[s]" as currently alleged by the plaintiff are ones which have not and will not result in actual physical damage to the home as currently interpreted by Louisiana

---

[23] *Id.*

[24] *Graf*, 713 So.2d at 690.

[25] La. Rev. Stat. Ann. § 9:3144(B)(13).

courts.[26] In the absence of adequate allegations of actual physical damage to the home as required by the statute, plaintiff's claim against D.R. Horton under the NHWA must be dismissed. The court finds there is no need for further amendment, as plaintiff has already filed an amended complaint (Doc. No. 36).

### 3. NHWA, Redhibition, and Fraud Claims against Reliant

In the Motion to Dismiss, defendant Reliant alleges that plaintiff fails to state a claim upon which relief can be granted under the NHWA since Reliant is not a

---

[26] Compare *Hutcherson v. Harvey Smith Const., Inc.*, 7 So. 3d 775, (La. App. 1st Cir. 02/13/09) (improper roofing design causing roof decking to rot and bedroom ceiling to collapse constituted actual physical damage under the NHWA); *Bynog v. M.R.L., L.L.C*, 903 So. 2d 1197, 1201 (La. App. 3d Cir. 06/01/05) ("[c]racking of plaster, yellowing and the rubbing off of newly applied paint all constitute physical damages" under the NHWA) *Eiswirth v. Anthony L. Golemi, Contractor, Inc.,* 864 So. 2d 792, 796-797 (La. 5th Cir. 12/30/03) (cracked floor tiles, cracked or mildewed ceilings, insufficient drainage, and cracked and failing exterior doors, are defects which resulted in actual physical damage to home); *Craig*, 785 So.2d at 1003-1004 (finding actual physical damage to a home where the improper installation of a fireplace caused a crack in the chimney, the crack required the dismantling of the hearth, and the dismantling of the hearth resulted in a house filled with choking smoke and soot); *Thorn*, 745 So.2d at 660-662 (holding that the bowing of walls due to faulty construction, and the improper bracing of ceilings joists and roof rafters which would have resulted in the home not passing FHA or VA standards, rendered the home structurally unsound, and which resulted in a sagging roof constituted actual physical damage under the NHWA); *Graf*, 713 So.2d at 688-689 (deficiencies in the foundation, floor structure, wall structure, and roof/ceiling structure of a home due to builder's noncompliance with the building standards were so substantial that the structural integrity of the home had been diminished. This diminution of structural integrity constituted actual physical damage as required by the act) with *Koch v. Lamulle*, 2009 WL 1270440, *2 (La. App. 1st Cir. 05/08/09) (unpublished) (NHWA claim was not viable where a bulkhead, which allegedly failed to stabilize soil around a home, was an improvement that was not part of the home itself and where there was no evidence of actual physical damage to the home); *Alexander v. Henderson Condo. Assoc., Inc.*, 778 So.2d 627, 629 (La. App. 4th Cir. 12/27/00) (noise caused by neighbors' use of rooftop clubhouse area of condominium was not a "major structural defect," within meaning of the NHWA, if for no other reason than the absence of any allegation of any actual physical damage).

builder, and that claims against Reliant in redhibition and fraud have prescribed. Each of these contentions will be addressed in turn.

### a. NHWA

Plaintiff contends that Reliant meets the statutory definition of a "builder" and is thus subject to claims under the NHWA. In support of his position, plaintiff points to the fact that Reliant installed the defective heating and air conditioning system in his home. Defendant disputes plaintiff's position, alleging that Reliant merely installed the air conditioning and heating unit in plaintiff's home and did not construct the home or any "addition thereto" as required by the NHWA.[27]

The NHWA defines a builder as "any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence."[28] In *Allstate Enterprises, Inc. v. Brown*, 907 So.2d 904, 910-12 (La. App. 2d Cir. 6/29/05), the court interpreted this provision as it related to a subcontractor hired to frame the foundation, pour the slab, and frame up the plaintiff's new home. The court held that the subcontractor was not a "builder" under the NHWA because it was only responsible for performing a portion of the work. Specifically, the *Allstate* court reasoned that because the central definition of the NHWA is for the "home," which is "any new structure designed and used only for residential use . . . constructed by

---

[27] See La. Rev. Stat. Ann. § 9:3143(1).

[28] La. Rev. Stat. Ann. § 9:3143(1).

12

*the builder*,"[29] the NHWA permits warranties by only a single builder for the entire structure.[30] Thus, the court found that the NHWA was not intended to have a scope applicable to a subcontractor that did not construct the entire structure and deliver it to the homeowners as their new home.[31]

Applying *Allstate* to the instant case, because Reliant merely installed the air conditioning system and did not construct the entire home, it cannot be a builder for purposes of the NHWA. Accordingly, plaintiff's NHWA claims against Reliant must be dismissed.

**b. Redhibition**

Plaintiff next alleges that Reliant is liable in redhibition. Defendant argues that plaintiff's redhibition claims have prescribed.

Louisiana Civil Code article 2534(A)(2) sets forth that when a seller did not know of the existence of the alleged defect, the prescriptive period is one year from the day the property was delivered to the buyer. If, on the other hand, the seller knew or is presumed to have known of the existence of the defect, the applicable period is one year from the day the defect was discovered by the buyer.[32] However, prescription is "interrupted when the seller accepts the thing for repairs and

---

[29] Emphasis added. La. Rev. Stat. Ann. § 9:3143(3).

[30] *Allstate*, 907 So.2d at 912.

[31] *Id.*

[32] La. Civ. Code Ann. art. 2534(B).

13

commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs."[33]

Plaintiff purchased his home on November 21, 2006 and contacted defendants to remedy the problems by letter dated July 9, 2007.[34] Thus, plaintiff was aware of the alleged deficiencies in the cooling and heating system as early as July 9, 2007. Plaintiff filed suit in state court on August 22, 2008, more than one year after the date the property was delivered and the date the defect was discovered. Given that the action appears to have prescribed on the face of the petition, plaintiff bears the burden of establishing facts which would interrupt prescription.[35]

In his amended complaint, plaintiff alleges that D.R. Horton and Reliant made numerous unsuccessful attempts to repair the air condition systems during "the summer of 2007."[36] Plaintiff later clarified this statement to reflect that the repair attempts were made both before and after July 9, 2007.[37] Plaintiff also contends that defendants had not abandoned their efforts to repair the cooling systems as of the filing of the lawsuit.[38] Accepting plaintiff's allegations as true, as required by Federal Rule of Civil Procedure 12(b)(6), plaintiff has sufficiently established facts which

---

[33] La. Civ. Code Ann. art. 2534(C).

[34] Record document number 36, p. 5, ¶ 12.

[35] *Ayo v. Johns-Manville Sales Corp.*, 771 F.2d 902 (5th Cir.1985).

[36] Record document number 36, p. 5, ¶ 11.

[37] Record document number 41, p. 10.

[38] Record document number 36, p. 23, ¶ 83.

would interrupt prescription such that a claim filed on August 22, 2008 would not have prescribed.

### c. Fraud

Plaintiff also seeks to hold Reliant liable in fraud. Defendant argues that plaintiff's fraud claims have prescribed. In response, plaintiff argues that (1) the ten year prescriptive period set forth in La. Civ. Code art. 3500 is applicable; (2) *A&M Pest Control Service, Inc. v. Fejta Const. Co., Inc.,* 338 So.2d 946 (La. App. 4 Cir. 10/13/76), and La. Civ. Code Ann. art. 2762 provide for a longer prescription period; and alternatively that (3) one year prescription under La. Civ. Code art. 3492 is applicable but the doctrine of contra non valentem suspended the running of prescription.

La. Civ. Code art. 3500 provides ten year prescription for "[a]n action against a contractor or an architect on account of defects of construction, renovation, or repair of buildings and other works." La. Civ. Code art. 2762 provides that an architect or other workman is liable for loss should a building fall to ruin in part because of workmanship in the course of ten years, if the building is made of stone or brick, or five years, if the building is built in wood or with frames filled with bricks. Neither of these statutes is applicable to plaintiff's fraud claims. It is well settled under Louisiana law that claims for fraud prescribe after one year.[39] Thus plaintiff's first and second contentions are without merit.

---

[39] See La. Civ. Code Ann. art. 3492; *Cacioppo v. Alton Ochsner Foundation Hosp.,* 806 So.2d 803, 805 (La. App. 5 Cir. 12/26/01).

Turning to plaintiff's third argument, the Court agrees that the prescriptive period in La. Civ. Code art. 3492 is applicable to plaintiff's fraud claims. Article 3492 states in relevant part that "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. . ." Because the running of prescription would have commenced on November 21, 2006, the day plaintiff received possession of his home, plaintiff argues that the doctrine of contra non valentem applies to suspend prescription beyond August, 23, 2007, one year prior to the filing of his suit.

Contra non valentem is a Louisiana jurisprudential doctrine under which prescription may be suspended.[40] Because the doctrine is of equitable origin, it only applies in exceptional circumstances.[41] There are four recognized categories of this doctrine: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[42]

---

[40] *Carter v. Haygood,* 892 So.2d 1261, 1268 (La. 2005).

[41] See *Renfroe v. State ex rel. Dep't of Transp. & Dev.*, 809 So.2d 947, 953 (La. 2002).

[42] *Carter*, 892 So.2d at 1268.

The fourth category of contra non valentem, commonly known as the "discovery rule," is an equitable pronouncement that statutes of limitation do not begin to run against a person whose cause of action is not reasonably known or discoverable by him, even though his ignorance is not induced by the defendant.[43] Applying this fourth category to the facts in the instant case, prescription was suspended as late as July 9, 2007, the date when plaintiff knew of the defect and sent a letter to defendants requesting that they remedy the problems. Plaintiff filed suit in state court on August 22, 2008, more than one year after prescription began to accrue again on July 9, 2007. Thus, because this fourth category of contra non valentem is not enough to suspend prescription such that plaintiff would have a valid cause of action, plaintiff argues that the third category applies as well.

The third category of contra non valentem encompasses situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by some concealment or fraudulent conduct on the part of the defendant.[44] In order for this exception to apply, it must first appear as a matter of law that words, actions, or inaction on the part of the defendant were designed to, and did, lull plaintiff into a false sense of security and a course of inaction.[45] Second, it must appear that the specific acts alleged to have occurred in this particular case, would,

---

[43] *Teague v. St. Paul Fire & Marine Ins. Co.*, 974 So.2d 1266, 1274 (La. 2/1/08).

[44] *Id.* at 1269.

[45] *Williams v. Red Barn Chem., Inc.*, 188 So.2d 78 , 81 (La. App. 1st Cir.1966).

as a matter of law, be compelling so as to bring this case within that class of situations adequate to suspend the running of prescription and justify the plaintiff in bringing his action late.[46]

Under the third exception to prescription, plaintiff contends that defendants knew that the cooling system was defective and continued to explain to plaintiff that the unit was repaired in order to lull plaintiff into a course of inaction in the enforcement of his right. Although it may well be that the repairs attempted by defendants were designed to, and did, temporarily stop the plaintiff from filing suit against the defendant, the acts of repairing and continuously assuring plaintiff that the unit was repaired were not the type of "compelling" acts such as to "bring [this] case within that class of situations adequate to suspend the running of prescription and justify the plaintiff in bringing his action late."[47]

Plaintiff sent a letter to defendants on July 9, 2007, demanding the "installation of a proper air conditioning and heating system within the next fifteen (15) days."[48] In the same letter plaintiff warned that the "failure to do so will result in [plaintiff] filing a formal complaint with the Louisiana State Licensing Board for Contractors and

---

[46] *Id.*

[47] *Id.* at 82.

[48] Record document number 36, Exhibit A.

resulting legal action."[49] The plaintiff did neither until August 23, 2008, when he filed this action in state court.

The words and actions of defendants in this case do not justify plaintiff waiting from July 9, 2007 to August 23, 2008 to judicially assert his claim. The most that could be said is that prescription would have been suspended as a result of defendant's statements and actions during the period in which plaintiff might reasonably have expected to receive the promised repairs from defendants, and no longer.[50] Because plaintiff expected to receive the promised repairs no later than 15 days from July 9, 2007, the Court finds that prescription was suspended until July 24, 2007. As plaintiff's suit was not filed until August, 23, 2008, this Court finds that plaintiff's fraud claims against Reliant have prescribed.

Accordingly, for the foregoing reasons assigned, the motion to dismiss (Doc. No. 7) is GRANTED IN PART AND DENIED IN PART, as follows.

IT IS ORDERED that all of plaintiff's claims against D.R. Horton are HEREBY DISMISSED.

IT IS FURTHER ORDERED that plaintiff's New Home Warranty Act claim against Reliant is DISMISSED.

IT IS FURTHER ORDERED that plaintiff's fraud claim against Reliant is DISMISSED. However, plaintiff's redhibition claim against Reliant remains viable.

---

[49] Record document number 36, Exhibit A.

[50] See Williams, 188 So.2d at 82.

The court DEFERS ruling on the Motion for Default Judgment (Doc. No. 54).

Signed in Baton Rouge, Louisiana, on July 28, 2011.

                           **JUDGE JAMES J. BRADY**
                           **UNITED STATES DISTRICT COURT**