UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MIKE GINES, *individually and on behalf of*
*all others similarly situated*

CIVIL ACTION

VERSUS

NO. 08-598-JJB

D.R. HORTON, INC., ET AL.

## RULING ON MOTION TO DISMISS

Before the Court is a motion to dismiss (Doc. 76) filed by defendants Reliant Heating & Air Conditioning of Louisiana, LLC ("Reliant-LA") and Reliant Heating & Air Conditioning, Inc. ("Reliant-TX") against plaintiff Mike Gines and the putative class he represents. Gines filed an opposition (Doc. 79), and defendants filed a reply (Doc. 80). Oral argument is unnecessary. The Court has jurisdiction over the state law claims presented in the complaint under 28 U.S.C. §§ 1332 and 1367. (*See* Magistrate Judge's Report on Motion to Remand, Doc. 29; Ruling Adopting Report, Doc. 35).

I. Factual and Procedural Background

On November 21, 2006, plaintiff purchased a new home constructed by D.R. Horton, Inc. The air conditioning and heating system was installed by Reliant-LA and allegedly designed by Reliant-TX. After plaintiff took possession of his home, he discovered the heating and cooling system did not have the capacity to effectively maintain an appropriate temperature.

On July 9, 2007, plaintiff made written demand upon D.R. Horton to repair the system. Multiple attempts were made by D.R. Horton and Reliant-LA to repair the cooling system during summer 2007, but the problems persisted.

Plaintiff filed suit against D.R. Horton, Reliant-LA, and Reliant-TX in state court on August 22, 2008. The matter was removed to this Court on September 23, 2008. Plaintiff later

1

filed an amended complaint, making class allegations on behalf of himself and other homeowners in the Forest Ridge subdivision in Livingston Parish, Louisiana, all of whom Gines alleges have similarly inadequate heating and cooling systems through the fault of the same defendants.

On July 28, 2011, this Court dismissed all the claims against D.R. Horton, finding that the New Home Warranty Act (NHWA), La. R.S. 9:3141 *et seq.*, provided the sole remedy for Gines against the home builder and that Gines could not state a claim because there was no physical damage to the home as the Act requires. The Court also dismissed the NHWA claim against Reliant-LA because it was not the builder of the home as contemplated by the Act. It further dismissed a fraud claim against Reliant-LA based on the running of the one-year prescriptive period applicable to Gines's allegations. However, the extent of that ruling's applicability to Reliant-TX is questionable because it was arguably not a party to the case at that time. (*See* Motion for Default Judgment, Doc. 54; Ruling Deferring Ruling on Motion for Default Judgment, Doc. 62; Order Directing Notice to be Sent, Doc. 65; Return on Service, Doc. 66; Order for Motion Filing Deadlines, Doc. 73 (permitting Reliant-TX to file motion asserting lack of jurisdiction); Motion to Dismiss, Doc. 76 (asserting failure to serve and lack of personal jurisdiction as bases for dismissal as to Reliant-TX)).

With D.R. Horton dismissed from the case, Reliant-LA and Reliant-TX (collectively, "Reliant" or "defendants") were both permitted leave to file a new round of motions. (Order of Magistrate Judge, Doc. 73). In response to the motion to dismiss filed by Reliant, Gines clarified that he does not seek redhibition claims against either entity and that the dismissal of the NWHA claim against Reliant-LA applies equally to Reliant-TX. (Memo. in Opp., Doc. 79, p. 3). Further, he also agrees that he has not made a contractual claim against either entity. (*Id.*).

2

Thus, only three claims remain against each Reliant defendant: (1) a claim for poor quality workmanship under La. C.C. art 2762; (2) a claim for non-compliance of contract under La. C.C. art. 2769; and (3) a tort claim for negligent design and construction under La. C.C. arts. 2315 and 2316. Moreover, Gines contends that his pending motion for default judgment against Reliant-TX should be granted because no jurisdictional or service-related problems bar such a default judgment.

The Reliant defendants have asserted various reasons for dismissing the suit, including lack of personal jurisdiction over Reliant-TX, insufficient service of process on Reliant-TX under La. C.C.P. art. 1261, and failure to state cognizable claims for which relief can be granted under Fed. Rule Civ. P. 12(b)(6). In the 12(b)(6) portion of its motion, Reliant argues that both prescription and a failure to adequately plead particular elements of the relevant claims defeats Gines' complaint.

## II. Motion to Dismiss Standard

Pursuant to Fed. Rule Civ. P. 12(b)(6), on a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded, non-conclusory facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557. When well-pleaded factual allegations populate the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. Courts

3

may consider not only the complaint itself, but also documents attached to the complaint or documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). The facts in the complaint are viewed collectively, not scrutinized in strict isolation. *Id.*

### III. Law and Analysis

Reliant-TX asserts it has never established any contacts—specific or general—in Louisiana which would subject it to personal jurisdiction in this Court under traditional notions of fair play and substantial justice. Gines argues that Reliant-TX has defaulted on the liability issues presented by its well-pleaded facts, which bars their litigation here.

### A.

Rule 55 of the Federal Rules of Civil Procedure provides for default judgments against parties who do not defend actions brought against them. In this case, the clerk of court made an entry of default against Reliant-TX under Rule 55(a). (Doc. 53). Gines has moved for this Court to enter judgment on that entry of default under Rule 55(b)(2). (Doc. 54; *see also* Order, Doc. 62 (deferring ruling on motion for default judgment)). Rule 55 provides in pertinent part:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> **(b) Entering a Default Judgment.**
> ***
> **(2)** *By the Court*. In all other cases, the party must apply to the court for a default judgment…. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> **(A)** conduct an accounting;

4

    **(B)** determine the amount of damages;
    **(C)** establish the truth of any allegation by evidence; or
    **(D)** investigate any other matter.

  **(c) Setting Aside a Default or a Default Judgment.** The Court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

Fed. Rule Civ. P. 55.

  Because an entry of default has already been entered under Rule 55(a), the Court may set aside that entry only for good cause. Fed. Rule Civ. P. 55(c). Likewise, the Court may enter a default judgment only when there is "a sufficient basis in the pleadings for the judgment entered…. The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Const. Co., Ltd. V. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A defaulted defendant "is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought." *Tyco Fire & Security, LLC v. Alcocer*, 218 Fed.Appx. 860, 863 (11th Cir. 2007) (citing *Nishimatsu*, 515 F.2d at 1206). Moreover, "a defendant in default still can challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him." *Id.* at 864; *see also Jackson v. FIE Corp.*, 302 F.3d 515, 531 (5th Cir. 2002) (permitting defaulted defendant to attack rendering court's personal jurisdiction over it in Rule 60 context). But defendants may not raise procedural or other defenses, such as *forum non conveniens*, once an entry of default has been made. *Id.*

  Because binding case law compels this Court to address issues of personal jurisdiction, notice and service, and the sufficiency of the claims, even in the face of an entry of default, the Court will treat each in turn.

  1. *Personal Jurisdiction over Reliant-TX*

Reliant-TX claims the Court lacks personal jurisdiction over it under either specific or general jurisdiction. Gines argues the Fifth Circuit's decision in *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983) allows imputation of Reliant-LA's contacts to Reliant-TX under these circumstances.

In diversity actions, federal courts may exercise jurisdiction over a non-resident only to the extent that a state court within the federal court's district could properly exercise jurisdiction. *Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). Louisiana's long-arm statute, La. R.S. 13:3201, permits Louisiana courts to exercise jurisdiction to the limits of due process in accordance with the federal constitution. *A&L Energy, Inc. v. Pegasus Group*, 791 So.2d 1266, 1270 (La. 2001). Thus, the due process inquiry under the Louisiana long-arm statute collapses into the familiar minimum contracts inquiry under *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny. *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990).

As interpreted by the Supreme Court, the Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Asarco*, 912 F.2d at 786; *Int'l Shoe*, 326 U.S. 310. The "minimum contacts" prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction. A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v.*

6

*Hall*, 466 U.S. 408 (1984). In short, "[t]he focus [of this inquiry] is on the relationship between the defendant, the forum, and the litigation." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). When a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, a court may exercise general jurisdiction when the defendant has engaged in "continuous and systematic contacts" in the forum. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). Once the plaintiff has made out a prima facie showing under the first prong, the burden shifts to the defendant to show, under the second prong of the constitutional due process inquiry, that the exercise of jurisdiction would not comply with "fair play" and "substantial justice." *See id.*

Plaintiffs need only make a *prima facie* showing of jurisdiction if a district court declines to hold an evidentiary hearing, and proof by a preponderance of the evidence is not required. *Johnston v. Multidata Systems Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In deciding motions to dismiss for lack of jurisdiction, plaintiff's jurisdictional allegations (in either the complaint or an affidavit) must be taken as true unless plaintiff fails to make affidavit assertions that controvert defendant's affidavit assertions. *Id.*; *Asarco*, 912 F.2d at 785-86.

Plaintiff did not file a jurisdictional affidavit. Reliant-TX, on the other hand, filed a jurisdictional affidavit submitted by its president, Charles Riner. (Riner Aff., Doc. 76-2). If Riner's affidavit assertions foreclose the possibility of jurisdiction, then under the authority of *Johnston* and *Asarco* the Court must accept those assertions for purposes of determining minimum contacts of Reliant-TX itself. Riner's affidavit is comprehensive and conclusive of the matter as it relates to Reliant-TX's contacts in Louisiana. Riner's affidavit establishes that Reliant-TX renders no services, conducts no business, has no employees, owns no real property and maintains no bank accounts in Louisiana. (*Id.*, ¶¶ 7-15). While the amended complaint

7

alleges Reliant-TX designed the cooling system for the houses, (Doc. 36, ¶ 9), plaintiff has not introduced a jurisdictional affidavit to controvert Riner's assertions. Riner's uncontroverted jurisdictional assertions suffice to show lack of minimum contacts with Louisiana sufficient to exercise personal jurisdiction over Reliant-TX under either specific or general jurisdiction principles.[1]

Gines nonetheless contends that because Reliant-TX owned and dominated Reliant-LA, the relevant contacts of Reliant-LA as a wholly-owned subsidiary should be imputed to Reliant-TX, the parent corporation. This calls for an analysis under *Hargrave*.

In *Hargrave*, the Fifth Circuit examined the bases for imputing to a parent corporation the contacts of a subsidiary. The mere fact that a parent corporation wholly owns a subsidiary and shares common management personnel with the subsidiary does not in itself defeat their presumably separate corporate identities for purposes of jurisdiction. 710 F.2d at 1160. Therefore, this circuit generally requires "proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Id.* While the totality of the circumstances regarding corporate similarity must be examined, "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Id.*

In determining whether to maintain corporate separateness of contacts, this Court must look to several non-exhaustive factors:

(1) The amount of stock owned by the parent of the subsidiary;
(2) Whether the entities have separate headquarters, directors, and officers;
(3) Whether corporate formalities are observed;

---

[1] Reliant-TX also denies that it designed the cooling systems at issue. Rather, it asserts that Reliant-LA conducted all the designing, but when D.R. Horton sought from Reliant-LA the load calculations used in designing the system, Reliant-LA could not locate its records. Therefore, Reliant-TX says it re-calculated the appropriate measurements after this litigation commenced. (Riner Aff., Doc. 76-2, ¶¶ 23-33).

8

(4) Whether the entities maintain separate accounting systems; and
(5) Whether the parent exercises complete control over the subsidiary's general policies or daily activities.

*Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Hargrave*, 710 F.2d at 1160). "[T]he presumption of institutional independence of related corporate entities may be rebutted by 'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship…." *Id.* (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)).

While proof of the amount of Reliant-LA stock owned by Reliant-TX is presumed to be 100% because of both companies' clear admissions throughout this litigation that Reliant-TX is the sole member of Reliant-LA, there is simply nothing in the record (or even in Gines' allegations) speaking to the issues of corporate formalities, accounting separateness, and the degree of control. Gines' conclusory allegations regarding these factors, (*see* Memo. in Opp., Doc. 79, p. 18), simply fail to establish the documentary proof the Fifth Circuit requires to rebut the presumption of corporate separateness. *Freudensprung*, 379 F.3d at 346-47 (affirming district court's grant of motion to dismiss based on lack of jurisdiction in part because website printouts of SEC filings were insufficient to overcome presumption and thus plaintiff failed to adduce any evidence on the *Hargrave* factors).

For these reasons, plaintiff has failed to controvert defendants' affidavit assertions on jurisdictional facts and failed to establish the applicability of the *Hargrave* factors. Therefore, exercising personal jurisdiction over Reliant-TX would be improper, and the Court must dismiss

it from this case.[2] The arguments regarding service and the sufficiency of the allegations will thus not be addressed as they pertain to Reliant-TX.

B.

Having concluded that dismissal of Reliant-TX from this litigation is required, the Court must now proceed to Reliant-LA's motion to dismiss for failure to state a claim under Fed. Rule Civ. P. 12(b)(6).

*1. Gines' Claim for Poor Quality Workmanship under La. C.C. art. 2762*

In count six of his amended complaint, Gines asserts that Reliant used negligent workmanship in the installation of his air conditioning system. Article 2762 of the Louisiana Civil Code provides:

> If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.

Reliant argues that the "fall to ruin" language in article 2762 requires actual physical damage, citing caselaw construing a similar provision, La. C.C. art. 2322, which imposes liability on a building owner "for the damage occasioned by its ruin" caused by neglected repairs or vices in the original construction.

In *Davis v. Royal-Globe Ins. Companies*, 242 So.2d 839 (La. 1971), the Louisiana Supreme Court defined article 2322's "ruin" as "the actual fall or collapse of a building … which must involve a more or less substantial component of the structure." 242 So.2d at 841-42. The

---

[2] Gines also attempts to assert judicial estoppel as a basis for jurisdiction. He claims that Reliant-LA's removal of this action relied on the corporate unity of the Reliant entities for purposes of diversity of citizenship should estop Reliant-TX from arguing corporate separateness for purposes of minimum contacts. This argument has no merit as Reliant-TX made no previous assertions in this litigation, and therefore as a separate party from Reliant-LA it cannot be estopped on the basis of another party's argument. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).
10

Fifth Circuit has likewise found the "ruin" described in article 2322 to require a structural falling down. *Moczygemba v. Danos & Curole Marine Contractors*, 561 F.2d 1149, 1151-52, n. 6 (5th Cir. 1977).

Gines argues that some interpretations of "ruin" have gone beyond the limiting language of those two cases. For instance, he argues *Dunn v. Tedesco*, 105 So.2d 264 (La. 1958) contemplated an article 2322 action for a defective bathroom heater which allegedly emitted noxious fumes which killed an infant. However, the Louisiana Supreme Court in that case was simply concerned with the sufficiency of the evidence to sustain a defense verdict and did not have occasion to authoritatively construe the statutory language. 105 So.2d at 265. In *House v. Thompson*, 452 So.2d 1195 (La. App. 1st Cir. 1984), a Louisiana appellate court found that a leaking central air conditioning unit in a house is a necessary appurtenance to the structure of the immovable and as such may come within the meaning of article 2322. 452 So.2d at 1200. As in *Dunn*, *House* did not involve an authoritative construction of the contours of "ruin." In *Leaber v. Jolley Elevator Corp.*, 354 So.2d 746 (La. App. 4th Cir. 1978), an elevator passenger successfully sued a building owner when the elevator fell out of control and crashed at the bottom of the elevator shaft. The *Leaber* court noted that the *Davis* case provided a stricter definition of "ruin" than some state appellate precedents, but concluded that an elevator was an original component of the building and thus met the strict *Davis* definition. 354 So.2d at 749. The Third Circuit held in *Fontenot v. Sarver*, 183 So.2d 75 (La. App. 3d Cir. 1966) that injuries to a child from an unguarded window fan could give rise to liability under article 2322, but that decision came before *Davis* narrowed the meaning of "ruin."

As the foregoing cases illustrate, Gines simply cannot fit his alleged injury within the parameters of "ruin" as defined in article 2322. Despite Gines' protestations to the contrary, no

11

reason exists why this definition would not equally apply to article 2762. Both articles deal speak of "ruin" in similar terms: 2322 is concerned with an owner's liability while 2762 speaks to an architect's or workman's liability, but those articles are concerned with vices in construction. If anything, there is a stronger case for requiring physical damage under the language of article 2762, which makes liability contingent on if "a building … should *fall* to ruin," whereas article 2322 imposes liability for "damage occasioned by a [building's] ruin." (emphasis added). Nevertheless, the use of "fall" implies at the least that "ruin" in article 2762 necessitates some physical movement in the structure of the building or a component thereof, just as *Davis* requires for purpose of article 2322. The Court therefore reads article 2762 as requiring the type of "ruin" described in *Davis*.

*Davis* establishes a high hurdle for showing ruin which Gines cannot overcome. While an inadequately-sized air conditioning unit certainly diminishes the value of a home, it does not on those facts alone effect physical damage upon the building which the "fall to ruin" language requires for purposes of article 2762. Gines' claim under La. C.C. article 2762 must therefore be dismissed.

    2. *Gines' Claim for Non-Compliance of Contract under La. C.C. art. 2769*

Despite openly acknowledging that he does not have a contractual relationship with Reliant (Memo. in Opp., Doc. 79, p. 14), Gines nonetheless brings a claim against it for non-compliance with contract under La. C.C. art. 2769. Article 2769 provides:

> If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.

The case of *Washington v. Degelos*, 312 So.2d 918 (La. App. 4th Cir. 1975) controls here. In *Washington*, an injured workman sued, among others, the corporate officers of his

12

employer, Degelos Brothers Grain Corporation, for injuries he sustained while riding a Bobcat at work. 312 So.2d at 919-20. The officers, acting as third party plaintiffs, sued the proprietor of the company which repaired the Bobcat, DeRouen Electrical Company, immediately prior to Washington's injury, seeking indemnity and/or contribution from the proprietor and his business. *Id.* at 920. The repair contract was between the Degelos Brothers and DeRouen Electrical. *Id.* at 921. The court found that before liability under article 2769 can be imposed on the "undertaker" of the work, there must exist a contractual relationship between the plaintiff and defendant which establishes an obligation in favor of the plaintiff. *Id.* Because the corporate officers were not privy to the contract between the two companies, the protections of article 2769 were not found to extend to them. *Id.* The *Washington* court added that any potential third party beneficiary claim the officers might have had sounded in tort rather than contract.[3] *Id.*

Gines admits to having no contractual relationship with Reliant, and he does not urge a third-party beneficiary theory of contractual liability regarding a potential contract between D.R. Horton and Reliant. While this Court is not strictly bound by the intermediate appellate decisions of Louisiana state courts under *Erie*, the Court finds the reasoning in *Washington* persuasive. Accordingly, because Gines did not contract with Reliant, he cannot recover for non-compliance of contract under La. C.C. art. 2769.

> 3. *Gines' Tort Claim for Negligent Installation of the Cooling System under La. C.C. art. 2315 and 2316.*

Finally, Gines brings a tort claim for negligence against Reliant under La. C.C. art. 2315 and 2316. Reliant does not contest the sufficiency of his allegations but instead argues that his cause of action under this section has prescribed.

---

[3] Presumably, this statement meant that since third party contractual beneficiaries must be expressly provided for in the relevant contract, any "third party beneficiary-type" argument absent a contractual provision so providing really goes to a tort duty undertaken rather than an obligation contractually imposed.

13

In Louisiana, liberative prescription operates in much the same way a statute of limitations applies in common law jurisdictions. Similarly, peremptive periods operate as statutes of repose. While prescription is measured based on the date a cause of action accrues (*i.e.*, the date of injury), peremption is calculated based on the occurrence of a certain event, which usually is the causative act of the defendant rather than the date plaintiff suffers injury. Louisiana applies a one year liberative prescriptive period to torts. La. C.C. art. 3492. For damage to immovable property, the period begins running from the day the owner knew or should have known of the damage. La. C.C. art. 3493. This Court has already determined that the prescriptive period began running on July 24, 2007, and Gines filed suit on August 23, 2008, too late to satisfy the one year period. (*See* Order, Doc. 62, p. 19 (dismissing fraud claims under one year prescriptive period)).

Gines primarily argues that the ten year prescriptive period of La. C.C. art. 3500 applies to this action. It provides that "[a]n action against a contractor or an architect on account of defects of construction, renovation, or repair of buildings and other works is subject to a liberative prescription period of ten years." Reliant is neither an architect nor, according the Louisiana jurisprudence, a contractor for purposes of this statute.[4] For example, in *State v. Robert E. McKee, Inc.*, 584 So.2d 1205 (La. App. 2d Cir. 1991), the State hired an architect and a general contractor to design and construct an addition to a State building. 584 So.2d at 1206. A mechanical engineering firm was then hired by the architects to design and construct the heating, ventilating and air conditioning (HVAC) system for the building. *Id.* The State did not have a contractual relationship with the firm handling the HVAC system, and thus the appellate

---

[4] Article 3500 cross-references articles 2322 and 2762, the two provisions regarding "ruin" of works by architects or undertakers discussed above.

14

court found the State's cause of action sounded in tort rather than contract or warranty. *Id.* at 1209. It thus applied the one year prescriptive period for torts rather than the ten year prescriptive period set forth in La. C.C. art. 3500. *Id.* at 1208-09. The *McKee* court thus implicitly found that subcontractors who neither have contractual privity with the owner nor make third party stipulations with the general contractor in favor of the owner do not fall under the definition set forth in article 3500. The Court finds this reasoning persuasive and

Gines additionally argues that La. R.S. 9:2772 supersedes La. C.C. art. 3492 in this case because it is the more particular provision. However, the provisions do not conflict because section 9:2772 is addressed to peremptive periods (a statute of repose) whereas article 3492 is addressed to prescriptive periods (a statute of limitations). Thus, no conflict exists and article 3492 applies to prescribe Gines' claim.[5]

### IV. Conclusion; Order

Accordingly, defendants' motion to dismiss (Doc. 76) is GRANTED. The Court does not have personal jurisdiction over Reliant Heating & Air Conditioning, Inc. Gines' remaining claims against Reliant Heating and Air Conditioning, LLC under La. C.C. arts. 2762 and 2769 fail to meet the required elements, and his tort claim has prescribed.

Signed in Baton Rouge, Louisiana, on January 25, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[5] Gines also claims the longer prescriptive period of article 2762 applies, but as discussed above, Gines cannot avail himself of article 2762.

15